IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALIYAH REMETZ,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>LEHIGH VALLEY HOSPITAL,<br>　　　　　Defendant. | :<br>:<br>:<br>:    Civil No. 5:23-cv-03489-JMG<br>:<br>:<br>: |

MEMORANDUM OPINION

**GALLAGHER, J.**                                                                             December 9, 2024

## I.    OVERVIEW

Employment law is clear: employers cannot not fire an employee because of a disability, refuse to make a good faith effort to accommodate an employee, or retaliate against an employee for requesting an accommodation. But these employment protections do not shield employees when they repeatedly violate their employers' rules. In those cases, employees must face the music.

Plaintiff Aliyah Remetz brings this employment lawsuit alleging claims of disability discrimination, failure to accommodate, and retaliation against Defendant Lehigh Valley Hospital ("Hospital"). The Hospital's position is that it fired Plaintiff because of her own misconduct. Put simply, she had to face the music. Because Plaintiff concedes that she was fired for misconduct and because the facts reveal that the Hospital did make good-faith efforts to accommodate her, Defendant's Motion for Summary Judgment is granted.

## II.    BACKGROUND

The Hospital's Tilghman Express Care ("Express Care") is open from 8 a.m. to 8 p.m. every day of the year and provides medical treatment to people suffering from minor health

conditions. Pl.'s Statement of Undisputed Facts at ¶¶ 2-3, ECF No. 18-2. The Hospital hired Plaintiff as a part-time Registration Specialist at the Express Care on November 4, 2019. *Id*. at ¶ 1. While applying to work for the Hospital, Plaintiff went through a pre-employment physical. She revealed during the physical that she had Crohn's disease. *Id*. at ¶ 4. At that time, she did not request an accommodation for her medical condition. *Id*. at ¶ 5.

### A. The First Accommodation Request

Two changes happened after Plaintiff started her job at the Hospital. First, in August 2021, she began working as the only Registration Specialist at the Express Care once she increased her hours to full time. *Id*. at ¶ 14. Second, the Express Care became busier after the COVID-19 lockdowns were lifted. *Id*. at ¶ 13. During the COVID-19 lockdowns, the Express Care was slow, and the Hospital's employees were allowed to use the bathroom and take thirty-minute lunch breaks whenever needed. *Id*. at ¶ 12. But when Plaintiff began working alone and the Express Care got busier, Plaintiff claimed that she could not take breaks because there were long lines of patients and Stephanie Forst, a Patient Care Manager, told her that she could not take a bathroom break if there were patients in line. *Id*. at ¶¶ 15-16.

So, in November 2020, Plaintiff requested an accommodation for the first time. *Id*. at ¶ 20. Specifically, she submitted a note from her primary care physician Dr. Nussbaum providing that "she should be allowed to take breaks every 4 hours to go to there [sic] restroom and eat a snack if needed." *Id*. at ¶ 26. Her Crohn's disease was listed as the only reason for needing the accommodation. *Id*. at ¶ 30.

The Hospital internally approved Plaintiff's request the next month. On December 3, 2020, Carolyn Finnerty, a Registered Nurse in the Hospital's Employee Health Department, sent an email to Plaintiff, Esther Harris, Plaintiff's manager, and Stephanie Jones, an employee in the

Hospital's Human Resources Department, explaining the details of Plaintiff's request. *Id*. at ¶ 21. After receiving the email, Ms. Harris and Ms. Jones talked about the accommodation request and determined that the Hospital could accommodate the request if staff at the Express Care could cover the desk when Plaintiff needed to take a break so that the desk would not be empty. *Id*. at ¶ 22. The two employees also decided that Ms. Harris would tell Plaintiff about their decision. *Id*.

But Plaintiff did not hear back about her request. So, on January 6, 2021, she sent a follow up email asking for an update from the Hospital. *Id*. at ¶ 23. The Hospital responded on February 12, 2021, providing Plaintiff with an approval letter allowing her to take breaks every four hours to go to the bathroom and eat snacks and, if she could not leave her desk, permitting her to eat snacks there. *Id*. at ¶¶ 31-32.

### B. The Yelling Incident

Things went south when Plaintiff got to work on October 10, 2021. After getting in, she went to the break room to put away her stuff. *Id*. at ¶ 49. In that room, she overheard two of her coworkers, Julie Wilkins and Dan Lang, talking negatively about the cleaning staff. *Id*. She left the area while yelling at Ms. Wilkins and Mr. Lang that they were making negative comments about their coworkers. *Id*. Ms. Wilkins then asked Plaintiff if she planned to yell at them the rest of the day. *Id*. at ¶ 50. When Plaintiff responded by yelling more, Mr. Lang told her to stop. *Id*. But Plaintiff continued to yell. *Id*.

Fed up with Plaintiff's behavior, Mr. Lang said that he was going to make a call and left the room. *Id*. at ¶ 51. Plaintiff responded: "I don't care they can fucking fire me, as a matter of fact, I'm going to quit, no, I quit, I'm done." *Id*. She then followed Mr. Lang outside and waited

for her manager to arrive. *Id*. at ¶ 52. Plaintiff's actions caused the Express Care to open late. *Id*. at ¶ 53.

In response to the yelling incident, the Hospital suspended Plaintiff on October 11, 2021, and began an investigation. *Id*. at ¶¶ 56-57. One week later, after the end of the investigation, the Hospital gave Plaintiff a Final Written Warning which provided that she would be terminated if she committed any other violations, reassigned her from the Express Care to the Emergency Department, and banned her from the Express Care unless she required medical care. *Id*. at ¶¶ 60-62.

Once Plaintiff moved to the Emergency Department, her approved accommodations were interrupted. Specifically, she was unable to take her breaks because of staffing shortages at the registration desk and the Emergency Department did not allow her to eat snacks at her desk. Pl.'s Reply Br., ECF No 18, Appx. 78-79. On September 29, 2021, Plaintiff reached out to the Hospital's Human Resources Department to inform them that the Hospital was not complying with her accommodations. *Id*. On November 11, 2021, the Hospital told her that it would allow her to continue to take her breaks but would not permit her to eat snacks at her desk. Pl.'s Statement of Undisputed Facts at ¶¶ 73-74. Plaintiff then sent an email to the Hospital on December 12, 2021, complaining that the Hospital did not schedule the meeting she requested to discuss her accommodations. Pl.'s Reply Br., ECF No 18, Appx. 112-13. The Hospital responded the very next day to inform her that it would follow up with the appropriate employees to set up the meeting. *Id*. The meeting never happened because Plaintiff was fired after the following incident.

4

### C. The Dumpster Incident

Although Plaintiff was reassigned to the Emergency Department after the yelling incident, the Express Care did not stay free of her presence for long. On November 30, 2021, Plaintiff went to the Express Care and hid behind the dumpster in the parking lot. Pl.'s Statement of Undisputed Facts at ¶ 83. Amber Burkit, an employee of the Hospital, told several of her coworkers at the Express Care that she had a surprise for them outside. *Id*. at ¶ 80. After they followed her to the parking lot, Plaintiff jumped out from her hiding place dressed as "Hanukkah Harry"—a fictional satirical character from *Saturday Night Live*— and handed each of them presents. *Id*.

On December 14 or 15, 2021, the Hospital found out about the dumpster incident and started another investigation. *Id*. at ¶¶ 76-77. The investigation revealed that Plaintiff went onto the Express Care's property in violation of the terms of her Final Written Warning. *Id*. at ¶¶ 83-84. So the Hospital decided to fire Plaintiff. *Id*. at ¶ 81. But since Plaintiff was on vacation from December 23, 2021, through January 3, 2022, the Hospital delayed telling Plaintiff about its decision until she returned to work. *Id*. at ¶ 86.

### D. The Final Accommodation Request

After getting back to work on January 3, 2022, Plaintiff placed another request for accommodations. *Id*. at ¶ 89. The Hospital informed her that she needed to schedule an appointment with Employee Health and bring her supporting documentation to the visit. *Id*. at ¶ 89. Before Plaintiff could do so, the Hospital fired her on January 6, 2022. *Id*. at ¶¶ 87, 93-95.

She then brought this lawsuit alleging claims of disability discrimination, failure to accommodate, and retaliation.

### III. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV. DISCUSSION

### A. Disability Discrimination

Plaintiff brings ADA and PHRA disability discrimination claims against the Hospital in Counts I and IV of her Complaint. Discrimination claims under the ADA and PHRA, like many other discrimination claims, are governed by the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); *see Law v. Garden State Tanning*, 159 F. Supp. 2d 787, 791 n.2 (E.D. Pa. 2001) (holding that the *McDonnell Douglas* analysis applies to employment discrimination claims under both the ADA and PHRA).

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Law*, 159 F. Supp. 2d at 791. To demonstrate a *prima facie* case of disability discrimination, the plaintiff must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations . . . and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gardner v. SEPTA*, 824 F. App'x 100, 105-06 (3d Cir. 2020) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). If the plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to "present a legitimate, non-discriminatory reason for the negative employment decision." *Law*, 159 F. Supp. 2d at 791. To overcome summary judgment, "the plaintiff must then show that the reason presented by the defendant is pretextual." *Id*.

### 1. Plaintiff Has Not Established a Prima Facie Case of Discrimination

The Hospital concedes that Plaintiff has demonstrated the first two factors of a *prima facie* case of disability discrimination. And for good reason; Plaintiff has established that she was "disabled" and that she was a "qualified" individual at the time she was terminated.

Under the first factor, "one has a disability if [s]he has 'a physical or mental impairment that substantially limits one or more major life activities.'" *Gardner*, 824 F. App'x at 106 (citing 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(g)(1)(i)). Plaintiff argues without denial that she suffers from Crohn's disease. Pl.'s Statement of Undisputed Facts at ¶ 4. This claim meets the first factor because courts in this district "have recognized [Crohn's disease] as a disability within the meaning of the ADA." *MacVaugh v. Cnty. of Montgomery*, 301 F. Supp. 3d 458, 464 (E.D. Pa. 2018) (citing *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 393 (E.D. Pa. 2011)).

Under the second factor, "a 'qualified individual' is someone 'who, with or without reasonable accommodation, can perform the essential functions of the employment position.'" *Gardner*, 824 F. App'x at 106 (citing 42 U.S.C. § 12111(8); *Taylor*, 184 F.3d at 306). There is no disagreement about whether Plaintiff performed her job duties throughout her employment with the Hospital. In fact, she worked even while waiting for the Hospital to respond to her accommodation requests. *See, e.g.*, Pl.'s Statement of Undisputed Facts at ¶¶ 36-37. So she also meets the second factor.

Plaintiff, however, fails at the third factor. At this final step, the "plaintiff must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action." *Mengel v. Reading Eagle Co.*, 2013 WL 1285477, at *4 (E.D. Pa.

Mar. 29, 2013) (citing *Yeskey v. Pennsylvania Department of Corrections*, 118 F.3d 168 (3d Cir. 1997)) (citations omitted). Plaintiff argues that she sent a request for accommodations and was terminated three days later. Pl.'s Reply Br., ECF No 18, at 11. According to Plaintiff, the close temporal proximity between sending the request and getting fired creates an inference of a causal link between her disability and termination. *See Tirk v. Dubrook, Inc.*, 2016 WL 427738, at *4 (W.D. Pa. Feb. 4, 2016) ("It is well-settled that temporal proximity is a relevant consideration in establishing causation.").

But the rest of the record shows a different reason for her termination. After the yelling incident, the Hospital banned Plaintiff from the Express Care and gave her a Final Written Agreement establishing that she would be terminated if she committed any other violations. Pl.'s Statement of Undisputed Facts at ¶¶ 60-62. She violated the Final Written Agreement during the dumpster incident by returning to the Express Care. And because of this violation, Defendant did what it said it would and fired her. *Id.* at ¶ 81.

If Plaintiff disputed these facts, there may have been a "genuine" dispute that could go to trial. *Baloga*, 927 F.3d at 752. That is not the case. Instead, Plaintiff admits in her Statement of Undisputed Facts that the Hospital decided to terminate her because she "was improperly on the Express Care property." ¶ 81. This concession prevents Plaintiff from establishing the causation element of her claim because it demonstrates that she was terminated not for her disability but for violating the Final Written Agreement. And firing an employee for misconduct is permitted under the ADA. *Wolski v. City of Erie*, 773 F. Supp. 2d 577, 591 (W.D. Pa. 2011) ("[T]he ADA does not preclude employers from disciplining or even discharging their employees for past misconduct."). Without meeting the third factor, Plaintiff has failed to make out a *prima facie* case of disability discrimination.

### 2. The Hospital's Decision to Fire Plaintiff Was Based on a Legitimate, Non-Discriminatory Reason

Even if Plaintiff made out a *prima facie* case of disability discrimination, her claim would still fail because the Hospital has provided a legitimate, non-discriminatory reason for its decision to fire her. "At the second stage of the *McDonnell Douglas* framework, an employer defendant can meet its burden by producing evidence which, taken as true, would allow a reasonable jury to conclude that there was a legitimate, non-discriminatory reason for the adverse employment decision." *Heard v. J & G Spas, LLC*, 2024 WL 1511901, at *7 (E.D. Pa. Apr. 8, 2024) (citing *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994)) (italics added). The Hospital has met its burden by providing a legitimate, non-discriminatory reason for Plaintiff's termination—she violated the Final Written Agreement. *Kowalski v. Brennan*, 2019 WL 1409724, at *8 (W.D. Pa. Mar. 28, 2019) (holding that terminating an employee because they violate a Last Chance Agreement "is a legitimate, non-discriminatory reason for an employee's termination").

Plaintiff fails to demonstrate that the Hospital's reason is really pretext for discrimination. At the last step of the *McDonnell Douglas* framework, the plaintiff can defeat a motion for summary judgment by "show[ing] that the reason presented by the defendant is pretextual." *Law*, 159 F. Supp. 2d at 791. The plaintiff "may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Marconi v. Moon Area Sch. District*, 104 F. Supp. 3d 686, 702 (W.D. Pa. 2015). Plaintiff argues that the Hospital's reason is unworthy of credence because she has presented evidence supporting her claim that she was fired due to her disability. Specifically, she claims that the Hospital did not successfully comply with her approved accommodations and that

10

she was terminated three days after she sent her final accommodation request. Pl.'s Reply Br., ECF No 18, at 13.

None of this evidence changes Plaintiff's concession that the decision to fire her was based on her violation of the Final Written Agreement. Pl.'s Statement of Undisputed Facts at ¶¶ 81, 84. Plaintiff cannot accept such a fact and then make a 180-degree turn on summary judgment by stating that the real reason for her termination was her disability. Under these circumstances, the Court cannot conclude that the Hospital's reason is false or unworthy of credence. So, Plaintiff has failed to show pretext and the disability discrimination claim does not survive summary judgment.

    **B.**    **Failure to Accommodate**

Plaintiff also brings an ADA failure to accommodate claim in Count II of her Complaint. To succeed on a failure to accommodate claim for failure to engage in the interactive process, the "plaintiff must prove: (1) the employer had knowledge of the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking such accommodations or assistance; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Arana v. Temple Univ. Health Sys.*, 2018 WL 2063600, at *5 (E.D. Pa. May 3, 2018) (citing *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017); *Taylor*, 184 F.3d at 319-20) (other citations omitted).

There is no doubt that Plaintiff has established the first two factors. After all, it is undisputed that the Hospital learned about Plaintiff's Crohn's disease during the pre-employment physical and that Plaintiff later made several requests for accommodations for her disability. Pl.'s Statement of Undisputed Facts at ¶¶ 4, 20-21, 89.

What the parties dispute is the third factor—whether the Hospital made a good faith effort to accommodate Plaintiff. Plaintiff argues that the Hospital did not make a good faith effort because it "failed to engage in the interactive process." Pl.'s Reply Br., ECF No 18, at 15. Specifically, Plaintiff provides arguments under two theories to demonstrate the Hospital's failure—delay and rescission. Neither succeeds.

1. **Delay**

Plaintiff claims that she requested an accommodation for the first time in early November 2020 and that the Hospital did not respond to her request until February 12, 2021. *Id*. at 14. In other words, Plaintiff believes that the Hospital's delay in responding to her first accommodation request proves its failure to make a good faith effort to accommodate her.

Delay does play a role in determining whether a party engaged in the interactive process has acted in good faith. This principle was first established by the Third Circuit in *Mengine v. Runyon*. 114 F.3d 415 (3d Cir. 1997). In that case, our Court of Appeals cited the Seventh Circuit in *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996), for the idea that "[a] party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." 114 F.3d 415, 420 (3d Cir. 1997). Two years later, in *Taylor v. Phoenixville School District*, the Third Circuit reiterated its support of this principle by adopting the Seventh Circuit's ruling in *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996), which doubled down on *Beck*'s original delay theory. 184 F.3d at 312.

But the mere existence of a delay does not prove that a party has not acted in good faith. Instead, the delay must be "unreasonable." *DiFranco v. City of Chicago*, 589 F. Supp. 3d 909, 915 (N.D. Ill. 2022). "Whether a particular delay qualifies as unreasonable necessarily turns on

the totality of the circumstances, including, but not limited to, such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." *Id*. at 915-16 (quoting *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020)).

The facts here reveal that the Hospital's delay was not unreasonable. Although Plaintiff claims that the Hospital did not respond to her request from November 2020 until February 12, 2021, the Hospital was not sitting on its hands during that time. In December 2020, shortly after receiving Plaintiff's first accommodation request, the Hospital's employees discussed Plaintiff's request and approved it. Pl.'s Statement of Undisputed Facts at ¶¶ 21-22. It appears that the Hospital did not tell Plaintiff about the approval immediately because Ms. Harris did not update her. *Id*. at ¶ 22. But when Plaintiff asked for a status on her request on January 6, 2021, the Hospital's employees discussed the request again, confirmed that it was approved, and sent Plaintiff a letter approving her exact request a month later. *Id*. at ¶¶ 23-25, 31-32. So, while there was some delay in this case, the Court cannot conclude that it was unreasonable. *See Rosenfeld v. Canon Bus. Sols., Inc.*, 2011 WL 4527959, at *15 (D.N.J. Sept. 26, 2011) ("There is no evidence from which a reasonable jury could find that Defendant obstructed the process, failed to respond to Plaintiff's inquiries or did not try to find a reasonable accommodation for Plaintiff.").

Plaintiff also tries to show unreasonable delay by arguing that the Hospital ignored her request for a meeting to discuss the Hospital's failure to provide accommodations in the Emergency Department from December 12, 2021, to the date she was fired. Pl.'s Reply Br., ECF No 18, at 14. A review of the facts paints a different picture. On December 13, 2021, one day after receiving Plaintiff's email, the Hospital confirmed that it would follow up with the

appropriate employees to set up the meeting to discuss Plaintiff's concerns. Pl.'s Reply Br., ECF No 18, Appx. 112. This response contradicts the claim that the Hospital did not respond to Plaintiff's request for a meeting. And although the meeting may not have taken place, that delay is not unreasonable given that Plaintiff went on vacation ten days later from December 23, 2021, until January 3, 2022, and then was fired three days after returning to work. Pl.'s Statement of Undisputed Facts at ¶¶ 86-87.

### 2. Rescission

Next, Plaintiff contends that after she was transferred to the Emergency Department in August 2021, the Hospital failed to comply with her previously approved accommodations because of staffing issues. Pl.'s Reply Br., ECF No 18, at 14. Once Plaintiff complained to the Hospital about this issue, she claims that the Hospital rescinded her accommodations. *Id*.

"Rescinding a reasonable accommodation can be a violation of the ADA." *Donnelly v. Health Mgmt. Sols., Inc.*, 2022 WL 22883109, at *6 (S.D. Ohio Feb. 8, 2022) (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018)); *see Kosmac v. Nat'l R.R. Passenger Corp.*, 2024 WL 4252055, at *9 (W.D. Pa. Sept. 20, 2024). But Plaintiff's accommodations were not entirely rescinded. The Hospital's accommodations allowed Plaintiff to take a break every four hours to go to the bathroom and get a snack if needed. Pl.'s Statement of Undisputed Facts at ¶ 26. In case she was "unable to leave the registration area," the Hospital also permitted her to "eat a light snack at [her] desk." *Id*. After the Hospital transferred Plaintiff to the Emergency Department, it continued to let to take her breaks but did not allow her to eat food at her desk. *Id*. at ¶¶ 73-74. So the Hospital only rescinded one accommodation—Plaintiff's ability to eat at her desk.

Discontinuing this part of Plaintiff's accommodations does not establish a legal violation. In *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, the Third Circuit held that the employer's decision to discontinue the accommodation did not violate the ADA because the accommodation "exceeded the requirement of reasonable accommodation." 168 F.3d 661, 671 (3d Cir. 1999). The same is true here. "Reasonable accommodations are '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.'" *Id*. (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). The accommodation allowing Plaintiff to eat at her desk was provided at the Express Care if she was unable to take a break. Pl.'s Reply Br., ECF No 18, Appx. 82. Once she was moved to the Emergency Department, however, Plaintiff did not need to eat at her desk because she was able to take a thirty-minute lunch break and additional breaks. *Id*. Therefore, because the accommodation allowing Plaintiff to eat snacks at her desk "exceeded the requirement of reasonable accommodation under the ADA" once she was reassigned to the Emergency Department, the Hospital's decision to "discontinue the accommodation does not give her a cause of action against it." *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 671 (3d Cir. 1999).

Because Plaintiff cannot demonstrate that the Hospital failed to make a good faith effort to assist her in seeking accommodations for her disability under either a delay or rescission theory, her failure to accommodate claim must be dismissed as well.

    **C.**    **Retaliation**

Finally, Plaintiff brings ADA and PHRA retaliation claim in Counts III and V of her Complaint. Retaliation claims under the ADA and PHRA "are all analyzed under the *McDonnell*

15

*Douglas* burden-shifting framework." *Wells v. Retinovitreous Assocs., Ltd.*, 2016 WL 3405457, at *2 (E.D. Pa. June 21, 2016) (citing *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F. 3d 245, 256 (3d Cir. 2014)) (italics added).

The framework is now familiar. The plaintiff must first establish a *prima facie* case of retaliation. *Id*. To demonstrate such a case, the "plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Tohidi v. City of Reading Police Dep't*, 2024 WL 3015514, at *4 (E.D. Pa. June 13, 2024) (quotations omitted). If the plaintiff establishes a *prima facie* case of retaliation, "the burden then shifts to [d]efendant to articulate a legitimate, nondiscriminatory reason for the adverse action." *Wells*, 2016 WL 3405457, at *2. Ultimately, "if [d]efendant articulates a nondiscriminatory reason, then the burden shifts back to [p]laintiff to prove by a preponderance of the evidence that [d]efendant's proffered reason is a pretext for retaliation." *Id*.

Like the disability discrimination claim, the first two factors are not contested, and the issue then is whether Plaintiff satisfies the third factor of her claim—causation. To meet this factor, Plaintiff again relies on the temporal proximity between sending her final accommodation request and getting fired, which was three days. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294 (3d Cir. 2012). As explained in the context of the disability discrimination claim, however, Plaintiff cannot establish causation because she conceded that the real reason for her termination was that she violated the Final Written Agreement. Pl.'s Statement of Undisputed Facts at ¶¶ 81, 84, 88. And, as discussed earlier, even if Plaintiff could make out a *prima facie* case of retaliation, her concession that she was fired for violating the Final Written

16

Agreement prevents her from establishing pretext as well. Thus, her retaliation claim fails for the same reasons that her disability discrimination one does.

## V.     CONCLUSION

Because the Hospital made good-faith efforts to accommodate Plaintiff and fired her after she violated the Final Written Agreement, the Defendant's Motion for Summary Judgment is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge